IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **STEPHEN HOWARD SCHOEPFLIN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 07-0204-WS-M |
| | ) |
| **ROHR AERO SERVICES, L.L.C.,** | ) |
| | ) |
| Defendant. | ) |

### ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 40). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 41-42, 45-46, 48), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion for summary judgment is due to be granted in part and denied in part.

### BACKGROUND

The plaintiff was employed by the defendant as operations manager over wire harness repair. He was terminated in March 2006 following an incident concerning a wire harness delivered to a customer. The plaintiff alleges that his termination was based on his age, disability, and/or retaliation for complaining of age and/or disability harassment. He also asserts that he was subjected to a hostile work environment based on his age and/or disability. (Doc. 19). The complaint alleges that the defendant's conduct violated the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA").[1]

---

[1]The complaint also invokes the Rehabilitation Act of 1973 and Title VII of the Civil Rights Act of 1964 ("Title VII"). (*Id*. at 1). Because these statutes plainly are not in the

**DETERMINATIONS OF UNCONTROVERTED FACT**

The plaintiff was operations manager over the repair of wire harnesses.  In November 2005, customer JetBlue reported to the defendant that it had not received back two wire harnesses it had shipped to the defendant for repair.  A physical search by the plaintiff and others failed to turn up the harnesses.  On or about December 21, 2005, under the plaintiff's direction, one of the lost harnesses was replaced with another, using a formal "exchange" process in which the defendant surrendered title to the replacement harness and JetBlue surrendered title to the lost harness.

Rick Blackwell, Scott Rivers, Cindy Culbertson, and Kyle Boling were subordinate to the plaintiff.  On December 29, 2005, the plaintiff wrote an e-mail to them about the lost JetBlue harnesses, reading in pertinent part as follows: "We lost two, but I think [Boling] shipped one from stores.  If that is correct we need to make one for stores and one for jetBlue.  There should be sufficient material red tagged from other jetBlue jobs to fill our needs."  (Plaintiff Exhibit 7).

Boling responded that the defendant did indeed owe JetBlue another harness, and added, "Let me know the serial number for the harness which will be going to jetBlue and I will offer it up as an exchange."  (Plaintiff Exhibit 7).  In another group e-mail, the plaintiff replied, "Did the one that got lost have a serial number?  If so let's just ID the replacement with the same serial number and eliminate the hassle of an exchange."  (*Id*.).

Scrap wire cannot be used on a job.  The repair team used scrap wire, fashioned a replacement harness, and attached the serial number of the missing JetBlue harness.  The harness was shipped to JetBlue without an exchange and without advising JetBlue that the

---

picture, and because the plaintiff does not argue otherwise, the motion for summary judgment will be resolved under the ADA and ADEA.  The Court rejects the defendant's assertion, (Doc. 41 at 25 n.10), that the harassment and retaliation claims were pleaded exclusively under Title VII and are subject to dismissal on that basis.  Though inartful, the complaint does not purport to limit the source of those claims to Title VII.

harness was not in fact the harness JetBlue had presented for repair.

In January 2006, JetBlue discovered in its possession the two harnesses that it had previously complained had not been returned. It also discovered that it now had two harnesses with identical serial numbers. JetBlue reported this information to the defendant, which launched an investigation.

Members of the investigation team were the defendant's local ethics officer (Tracy Fleming), its human resources manager (Linda Howser), and its engineering and quality assurance manager (Ed BeVier). They reviewed the plaintiff's e-mails, interviewed a number of witnesses, and reached conclusions concerning the facts, rules violations, and relative culpability. Due to his friendship with the plaintiff, BeVier did not participate in the team's recommendations for sanction. Fleming and Howser discussed their findings with Stuart Kay, the defendant's general manager, and recommended that the plaintiff and Louis Estrada, a quality inspector, be terminated. Kay made the final decision to terminate the plaintiff and Estrada.

It is a violation of company rules to make, rather than repair, a harness. It is a violation of company rules to affix to a piece of equipment the serial number belonging to another piece of equipment. (Fleming Deposition at 9, 20; Howser Deposition at 8).

At all relevant times, the plaintiff has had essential tremor ("ET"). At the time of his termination, he was 59 years old. Estrada was 48 years old, with no disability.

**CONCLUSIONS OF LAW**

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 626(c)(1), and 42 U.S.C. § 12117(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district

court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986))(footnote omitted).

The parties have submitted a significant number of exhibits, some of which they have not referred to in their briefs and some of which they have referred to only in part.  There is no burden on the Court to identify unreferenced evidence supporting a party's position.[2]  Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  Accordingly, the Court's review is limited to those portions of the exhibits to which the parties have specifically cited.  The Court's review is similarly limited to those legal arguments the parties have expressly advanced.

Because the plaintiff does not rely on direct evidence of discrimination, the shifting burden appropriate for cases resting on circumstantial evidence applies.  In Title VII cases alleging discrimination, the burden is first on the plaintiff to establish a prima facie case.  If he succeeds, the defendant must meet its burden of producing evidence of one or more legitimate, nondiscriminatory reasons for the adverse employment action.

---

[2] *E.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998)("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *accord Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2.

The burden then shifts back to the plaintiff to show that the defendant's proffered reasons are a mere pretext for illegal discrimination. *E.g., Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002). The same burden-shifting paradigm applies to cases alleging retaliation under Title VII. *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). The same principles apply to cases arising under the ADEA and the ADA. *E.g., Holly v. Clairson Industries, LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007) (disability); *Walker v. NationsBank*, 53 F.3d 1548, 1556 (11th Cir. 1995) (age).

## I. Termination — Age and Disability.

"To establish discrimination in discipline, ... a plaintiff must first make out a prima facie case demonstrating: 1) that he belongs to a protected class under Title VII; 2) that he was qualified for the job; and 3) that a similarly situated employee engaged in the same or similar misconduct but did not receive similar discipline." *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000); *accord Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). This formulation has been applied when the discipline meted out is termination. *E.g., Burke-Fowler v. Orange County*, 447 F.3d 1319, 1322-23 (11th Cir. 2006); *Maniccia v. Brown*, 171 F.3d 1364, 1366, 1368 (11th Cir. 1999).[3] The defendant argues that the plaintiff cannot satisfy the third element. (Doc. 41 at 22-24; Doc. 46 at 3-5).

"When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, ... we require that the quantity and quality of the

---

[3]This formulation apparently trumps, in disciplinary termination cases, the more general formulation of the prima facie case in a termination case, where the third element may be satisfied by a showing that someone outside the protected class replaced the plaintiff. *E.g., Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002). The plaintiff assumes he can utilize the *Kelliher* formulation, (Doc. 46 at 5), but he offers no explanation as to how the Court can ignore the controlling precedent cited in text.

comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Burke-Fowler*, 447 F.3d at 1323 (internal quotes omitted).[4] The plaintiff's sole comparator is Paul Smith, the operations manager for thruster repair. (Doc. 46 at 26). The plaintiff offers evidence that someone in Smith's department attempted to modify a heat shield for a thrust reverser without engineering authority to do so. A mechanic reported the unauthorized attempt while it was occurring, and the equipment was not shipped to the customer. (BeVier Deposition at 26-28). Smith was not terminated as a result of this incident. ( Plaintiff Affidavit, ¶ f).

The fatal deficiency in the plaintiff's use of Smith as a comparator is that he lacks any evidence that Smith was in the remotest way involved in the conduct of his subordinates. Here, in contrast, the plaintiff's own e-mails identified him as the instigator of the incident for which he was terminated. Because the plaintiff's sole comparator did not engage in conduct nearly identical to that engaged in by the plaintiff, he cannot make out a prima facie case of discriminatory termination based on age or disability. For want of a prima facie case, the plaintiff's claim fails as a matter of law.

## II. Termination - Retaliation.

"To establish a prima facie showing of retaliation under Title VII, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Cooper v. Southern Co.*, 390 F.3d 695, 740 (11th Cir. 2004); *accord Weeks v. Harden Manufacturing Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (age, disability). The defendant challenges only the third of these elements. (Doc. 41 at 25-26).

---

[4]*Burke-Fowler* invoked the "prior panel precedent" rule to select the "nearly identical" standard rather than the seemingly lower standard of "similar[ity]" articulated in some Eleventh Circuit opinions. *Id*. at 1323 n.2.

Causal relation, for purposes of the prima facie case, is satisfied by a showing of a "close temporal proximity" between the decisionmaker's awareness of the protected conduct and the adverse employment action. *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). The plaintiff has testified that he complained to Linda Howser (the defendant's human resources manager) of age and disability harassment three weeks before he was terminated. (Plaintiff Affidavit, ¶ d). The Eleventh Circuit has repeatedly held that even longer time gaps satisfy the third element of the prima facie case without further evidence.[5]

The defendant ignores this close temporal proximity. Instead, it argues that the plaintiff's deposition testimony "belies any causal relation." (Doc. 41 at 25). Specifically, when asked, "What had you done that you are contending that someone wanted to get even with you about?" the plaintiff responded, "Did a good job, excelled at what I did." (Plaintiff Deposition at 19). The question thus asked about a personal motive to "get even," not a corporate motive to retaliate, and the plaintiff's answer cannot reasonably be read as negating any belief or contention that he was fired in consequence of complaining of age or disability harassment. The only other testimony to which the defendant refers is addressed to the relation between jealousy and age/disability discrimination, not retaliation. (*Id.* at 23).

---

[5]*See Farley v. Nationwide Mutual*, 197 F.3d at 1337 (when the plaintiff's EEOC charge was filed May 19, 1995, the plaintiff's supervisors learned of the charge "shortly after its filing," and the plaintiff was terminated on July 10, 1995, "[w]e find this timeframe sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case."); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (evidence that the plaintiff was involuntarily transferred three weeks after the mayor learned of her intent to look into the possibility of filing an EEOC charge "was sufficient to satisfy [her] initial burden to show a 'causal link' between her statements and her transfer"); *Donnellon v. Freuhauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (where the plaintiff was terminated one month after filing an EEOC charge, "[t]he short period of time ... between the filing of the discrimination complaint and the plaintiff's discharge belies any assertion by the defendant that the plaintiff failed to prove causation.").

In response to interrogatories, the defendant articulated its legitimate, nondiscriminatory reason as follows: "Plaintiff's employment was terminated for violating the company's business code of conduct, following an investigation into product integrity issues." (Doc. 45, Exhibit 8b at 4). The plaintiff complains that this reason is so subjective as to be incapable of carrying the defendant's intermediate burden. (Doc. 46 at 21-22). Subjective criteria include such imprecisely measurable things as attitude, articulateness, enthusiasm, common sense, good judgment, originality, ambition, loyalty and tact. *Chapman v. AI Transport*, 229 F.3d1012, 1033-34 (11th Cir. 2000). Violation of a company rule — unless it be a rule to exhibit enthusiasm or exercise tact — cannot easily be viewed as subjective.

At any rate, the defendant's objective reasons are more fully articulated in Howser's deposition:

> Q. Did you recommend that he be terminated?
>
> A. Yes, sir.
>
> Q. What was your reasoning?
>
> A. Based on his testimony, he instructed his team to do something — to create a part which we are not authorized to do and call it the same serial number as a perceived lost harness and not contact the customer. And he said he would do it again.
>
> Q. Was that the consensus of the people that were involved in the recommendation process that eventually got to Stuart Kay who made the final decision?
>
> A. Yes.

(Howser Deposition at 8). This testimony is unquestionably "clear and reasonably specific," *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981), and it satisfies the defendant's intermediate burden. The inquiry thus turns to the plaintiff's evidence of pretext. The plaintiff offers two types: (1) that his conduct violated

-8-

no rule; and (2) that others were treated more leniently.

"To show that the employer's reasons were pretextual, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (internal quotes omitted). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether *each* of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Id.* (emphasis added) (internal quotes omitted).

The plaintiff first argues that Fleming incorrectly blamed him for the team's use of scrap material rather than the red-tagged material to which his e-mail referred them. (Doc. 46 at 23). While Fleming testified that the plaintiff so instructed the team, he also testified that the reasons the plaintiff was terminated were his instructions to fabricate a replacement wire and to use a serial number from the lost harness — not the use of scrap. (Fleming Deposition at 6, 9).

The plaintiff next argues that he did not instruct anyone not to tell JetBlue what the team was doing and that it was the responsibility of Boling, as customer service representative, to communicate with JetBlue. (Doc. 46 at 18-19). Assuming without deciding that this is correct, and assuming without deciding that the defendant could not reasonably have found otherwise, it contradicts at best only one of the findings of violation articulated by Howser, which is insufficient under *Cooper*.

The plaintiff next argues that red-tagged material can be used for repair under certain conditions. (Doc. 46 at 19, 24). Assuming without deciding that this is correct, it is immaterial, since the plaintiff was not terminated for instructing the team to use red-tagged material.

The plaintiff next argues that the business code of conduct addresses only the

concealment or cover-up of an ethics violation and that there is no evidence he concealed or covered up anything. (Doc. 46 at 22-23). Because he has submitted only the fourth page of the document, the plaintiff has not shown that it fails to address conduct other than concealment or cover-up. On the contrary, the very paragraph to which he cites reflects (as one would expect) that there are ethical violations and concealment of ethical violations and that both are governed by the code of conduct. (Doc. 46, Exhibit 16).

The plaintiff next argues that he did not instruct anyone to create a harness. (Doc. 46 at 23). That, however, is precisely the import of his direction to "make" a harness for JetBlue. (Doc. 7). The plaintiff offers no explanation to the contrary.

In his final attack on the defendant's articulated reasons, the plaintiff notes that BeVier testified that using the same serial number on a replacement harness is "not a general practice." (BeVier Deposition at 24). The plaintiff extrapolates that "a non-preferred method is not a business code violation." (Doc. 46 at 24). What is a code violation, however, is determined by the code itself, not by theorizing, and the plaintiff's failure to introduce the code in its entirety precludes him from raising any question as to whether it covers his conduct. Because the query to which BeVier responded did not call on him to state whether use of the same serial number is a code violation, his answer in no way indicates that it is not.

As noted, it is uncontroverted that it is a violation of company rules to make, rather than repair, a harness, and it is a further violation of company rules to affix to a piece of equipment the serial number belonging to another piece of equipment. The plaintiff's own e-mails reflect that he instructed others to do precisely these things, the investigation committee so found, Howser and Fleming recommended termination on the basis of these violations, and Kay followed their recommendation. The plaintiff's evidence and arguments may draw into question any reliance by the defendant on his failure to contact JetBlue, but it leaves intact and undamaged both the factual predicate of the two violations described above and the defendant's reliance on those violations in terminating

his employment.

"Even when good reasons — the factual bases for which are not rebutted — are proffered by an employer, a plaintiff can, in some circumstances, still show discrimination. To do so, however, a plaintiff must show that [non-protected] employees with employment histories like the plaintiff's were not subject to the same adverse employment action as the plaintiff." *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002).

In an effort to show differential treatment, the plaintiff notes that, while three departments were implicated in the harness episode, he was the only department manager to be fired. (Doc. 46 at 18). The reason for this is pretty obvious — the plaintiff was the only department manager involved. He offers no evidence to the contrary. The plaintiff also points to Smith as one who was treated more favorably in a similar situation. (*Id*. at 26-28). As noted in Part I, however, the plaintiff has no evidence that Smith (as opposed to his subordinates) was in any way involved in that incident. Finally, the plaintiff complains that Boling was not terminated even though, as customer service representative, it was up to him to communicate with JetBlue about what was being done. (*Id*. at 22-23). Boling, however, was a junior employee, not a department manager, and he did not instruct others to violate company rules.

In sum, the plaintiff's evidence and arguments create no genuine issue of material fact regarding whether the defendant's articulated reasons are a pretext for retaliation.

### III. Hostile Work Environment - Age and Disability.

Before reaching the merits of the claim, the Court addresses the defendant's argument that the plaintiff is not protected by the ADA.

### A. Disability - Existence.

The ADA prohibits discrimination in employment against "a qualified individual with a disability." 42 U.S.C. § 12112(a). The defendant does not dispute that the plaintiff is a "qualified individual" as defined in Section 12111(8), but it argues that he is not someone "with a disability." A "disability," while defined several ways, is most often "a physical or mental impairment that substantially limits one or more of the major life activities" of the individual. *Id*. § 12101(2)(A).[6] The defendant concedes that the plaintiff's ET is an impairment, but it denies that the ET substantially limits one or more major life activities. (Doc. 41 at 18-20).

According to the plaintiff, "[b]ecause of my shaking I am unable to perform major life activities like other people; for example, caring for myself and performing manual tasks, with my hands shaking, I can hardly shave, wash with soap - I drop it, comb my hair, brush my teeth, eat soup with a spoon, hold a fork, drink without spilling it on myself, pouring a drink, button my shirt without several tries, tying my shoes, unzipping my pants to go to the bathroom, going to the bathroom, driving a car, writing on paper, mowing the lawn, etc." (Plaintiff Affidavit, ¶ a). In a motion to strike, the defendant argues that the affidavit should be disregarded because it represents a sham in the mold of *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc*., 736 F.2d 656 (11th Cir. 1984). (Doc. 47 at 2-3).

"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins*, 736 F.2d at 657. "This rule is applied sparingly because of the harsh effect [it] may have on a party's case." *Allen v. Board of Public Education*, 495 F.3d 1306, 1316 (11th Cir. 2007) (internal quotes omitted). "[T]o allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require

---

[6] This is the only definition on which the plaintiff relies. (Doc. 46 at 5).

far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the ... affiant ... was telling the truth." *Id*. (internal quotes omitted). Thus, there must be an "inherent inconsistency" between affidavit and deposition before the former may be disregarded as sham. *Id*. Otherwise, "the general rule allowing an affidavit to create a genuine issue even if it conflicts with earlier testimony in the party's deposition ... governs." *Rollins v. TechSouth, Inc*., 833 F.2d 1525, 1530 (11th Cir. 1987) (internal quotes omitted).

The defendant has not shown the plaintiff's affidavit to be a sham under this stringent test. In deposition, the plaintiff was asked about his ability to care for himself, and he responded, "It's difficult, but I manage to get by." (Plaintiff Deposition at 154). He was asked what he finds difficult, and he responded, "Button buttons; pour drinks from one – like pouring coffee, you've got to use both hands; you got to use both hands to shave." (*Id*.). He was not asked if there was anything else. He was not asked about driving or yard activities, and he testified that his "handwriting is terrible, especially when I'm in a hurry." (*Id*. at 156). The defendant notes that the plaintiff referred to, or hinted at, driving, (Plaintiff Deposition at 311, 317-18), but nowhere did he testify that driving was not made difficult by the ET. The Court concludes that the plaintiff's affidavit is not inherently inconsistent with his deposition testimony and that it goes beyond the deposition only where the defendant's questioning failed to seal off the plaintiff from subsequent elaboration.

The plaintiff's affidavit reflects that he considers himself substantially limited with respect to the major life activities of caring for himself and performing manual tasks. *See* 29 C.F.R. § 1630.2(i) (identifying these as major life activities under the ADA). These two categories eliminate from consideration any limitation on his ability to drive a car[7] or

---

[7]*See Collado v. United Parcel Service*, 419 F.3d 1143, 1157-58 (11th Cir. 2005) (driving a car is not itself a major life activity); *Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329-30 (11th Cir. 2001) (same; limitations on driving relevant only to the major life activity of working).

-13-

mow the lawn.[8]

While the defendant insists that the plaintiff is not substantially limited with respect to either caring for himself or performing manual tasks, (Doc. 41 at 20; Doc. 48 at 2-3), it has engaged in no meaningful analysis of either the evidence or relevant legal principles, and the Court will not undertake such an analysis in this subtle area on the defendant's behalf.  On the present record and argument, the Court cannot conclude that the plaintiff is not disabled.

### B. Harassment.

According to the plaintiff, throughout his employment he was called "Shaky," "ol' Shaky," "Shakster," "old fart," and variations on those terms.  He says he was called these things by Kay, Smith, BeVier, Howser, Fleming, Blackwell, Estrada, Boling, Jim Shiver, Brenda Kaiser, and Charmaine Hudson.  At team meetings throughout his employment, other team members joked about the plaintiff's age and disability.  (Plaintiff Affidavit, ¶¶ b, c, e).

The defendant has moved to strike these portions of the affidavit as sham.  (Doc. 47 at 3-5).  In deposition, the plaintiff was asked if he had ever heard Linda Howser or Stuart Kay use any type of offensive name for him, and the plaintiff unequivocally responded that he had not.  (Plaintiff Deposition at 34-35).  With respect to his inherently conflicting affidavit testimony that Howser and Kay used these names, the motion to strike is due to be granted.

The defendant also seeks to strike the affidavit to the extent it reflects that individuals other than Paul Smith made the comments.  The deposition reflects that the

---

[8]*See Bardwell v. Wal-Mart Stores, Inc.*, 32 Fed. Appx. 127, 127 (5th Cir. 2002) (mowing the lawn is not a major life activity); *Moore v. J.B. Transport, Inc.*, 221 F.3d 944, 951 (7th Cir. 2000) (same); *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999) (same); *Coldwell v. Suffolk County Police Department*, 158 F.3d 635, 643 (2nd Cir. 1998) (yard work is not a major life activity).

plaintiff identified by name only Smith and Danny Fell as persons who had made such comments, but it also reflects that the plaintiff: asserted that "a whole lot of people" made the comments; that he had kept a list of who said what; that he had left the list at the office when he was terminated; and that he could not name anybody else in his deposition "without my notes." (Plaintiff Deposition at 24, 28-29). The plaintiff's affidavit is not inherently inconsistent because his deposition was clear that other individuals made the comments but that he could not think of them at the moment.[9]

"To prove sexual harassment under Title VII, a plaintiff must show (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004); *accord Dockery v. Nicholson*, 170 Fed. Appx. 63, 66-67 (11th Cir. 2006) (disability - Rehabilitation Act); *Apodoca v. Secretary of Department of Homeland Security*, 161 Fed. Appx. 897, 901 (11th Cir. 2006) (age). The defendant challenges only the plaintiff's ability to prove the fourth element. (Doc. 41 at 28-30; Doc. 48 at 10-12).

The fourth element of the plaintiff's prima facie case contains both an objective and a subjective element. *Mendoza v. Borden*, 195 F.3d 1238, 1246 (11th Cir. 1999)(en banc). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." *Id.* (internal quotes omitted). The objective test "is somewhat fact intensive." *Id.* However, the Supreme Court has identified, and the Eleventh Circuit has routinely employed, a

---

[9]Contrary to the defendant's suggestion, (Doc. 47 at 10), it is not significant to the *Van T. Junkins* analysis that the plaintiff named additional persons in his affidavit without having recovered his lost notes, since he did not testify that he would never remember additional individuals until and unless he reviewed the notes, only that he could not do so at deposition.

four-factor analysis: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id*. The Court is required to "examine the conduct in context, not as isolated acts, and [to consider] the totality of the circumstances." *Id*.

The defendant argues that the plaintiff can establish neither the objective nor the subjective component of the fourth element. With respect to the objective element, the defendant assumes its motion to strike will be granted and thus fails to address the evidence of harassment presented in the plaintiff's affidavit. For this reason alone, the defendant has failed to meet its initial burden on motion for summary judgment. Nor does the defendant make any effort to apply the four-factor analysis to the plaintiff's evidence of harassment.

Subjectively, the defendant notes that the plaintiff felt he was doing a good job, that he loved his job and liked the people he worked with, that he continued to make presentations despite discomfort generated by the comments, and that a subordinate didn't notice the plaintiff react negatively to the comments. (Doc. 41 at 30). The defendant offers no analysis or authority for its dubious conclusion that these circumstances prevent the plaintiff from establishing that he subjectively considered the comments to create an abusive working environment, and the Court will not perform the task for the defendant's benefit.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted** with respect to the plaintiff's claims of wrongful termination based on age, disability and/or retaliation and **denied** with respect to the plaintiff's claim of hostile work environment based on age and/or disability. The defendant's motion to strike portions of the plaintiff's affidavit is **granted** with respect to the affidavit's claim that

Stuart Kay and Linda Howser made offensive comments based on his age and/or disability and **denied** in all other respects.  The defendant's motion to strike portions of the affidavit of Richard Edgeworth, (Doc. 49), is **denied as moot**.

DONE and ORDERED this 31st day of March, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
